The United States vs. Kevin Jenkins, Mr. Levin. If Your Honor's please, my name is Peter Levin. I represent the appellant Kevin Jenkins, and I would request five minutes for rebuttal in this case. That request will be granted. Thank you, Your Honor. If Your Honor's please, I believe that the facts and the procedural history in this case is very, very important to Your Honor's determinations. As Your Honor's are aware, there were three trials in this case. The first trial, my client was found not guilty of carjacking, and then on motions, post-verdict motions, Judge Schiller agreed to grant a new trial on the conspiracy to commit bank robbery. On the second trial, the jury was hung, and there was a missed trial. And on the third trial, my client was convicted of the conspiracy to commit bank robbery, along with the gun charges. I'm going to focus on the first trial first, where we get into the jury instructions given by Judge Schiller. It's our point that there was no testimony whatsoever presented, and it was not charged in the indictment, of any conspiracy to commit carjacking. The only testimony offered by the government witness on this is that there was a conspiracy to get a car or a minivan in order to commit the bank robbery. But there was no testimony whatsoever that there was a conspiracy to commit a carjacking, that people were going to be terrorized, that the car was going to be taken against them, putting them in fear of their lives or bodily injury. Now, you're saying that there was no testimony at the first trial. Well, yes, Your Honor, because then the case never came back again. That case was a guilty verdict, and that case wasn't re-argued. So we are arguing that the indictment did not charge overt acts of a conspiracy to commit carjacking. There was a conspiracy to steal a minivan, but there was nothing said by the government witness or in the indictment any overt acts that this was part of the conspiracy. The whole thing, if Your Honors looked at the facts in this case, they were driving all over. They were going to the state of Delaware. They were going through New Jersey. They were trying to find a car to steal so that they could commit the bank robbery and supposedly no one would know whose car it was. And then they go into this house where they see the car, and what takes place is Mr. Humbert goes in there, as does Mr. Jenkins, and acts are committed upon these people. And properly, this should have been a case in the state of New Jersey, and they should have been charged for what they did to these people in these homes. But then the federal government comes in, and they call it a carjacking. And rightfully so, the jury finds them not guilty of carjacking. And because of Judge Shiller's confusing answers to the questions asked by the jury, where Judge Shiller has to say to the jury, you're giving me a blank stare, which would indicate they didn't know what he was talking about, they come back within 45 minutes, find my client guilty of the conspiracy and not guilty of the carjacking. And they ask him specifically, what are the elements, Judge Shiller, what are the elements that we have to consider on the conspiracy to commit carjacking? Do we have to consider the carjacking itself, the substantive offense? And Judge Shiller says no. And again, the jury is confused, and one of the jurors says, could we ask it in layman's language? And the judge says, well, write me another question. And they don't write a question. Now, does this argument go to the argument you've raised, that there should only have been a conviction for one conspiracy? No, it doesn't, Your Honor. It's a separate argument because I'm focusing now on the first trial where the jury instructions were given, not that there should have been only one conspiracy charged. I'm not going to argue that because I feel that that's laid out in my brief. But I think the real important thing is the instructions he gave to the jury when they asked the question on the conspiracy to commit carjacking. Well, didn't he tell them what a conspiracy is and that's an inchoate crime and that they do not necessarily have to find that the substantive offense was actually committed, merely that there was a conspiracy to commit the crime? Well, he did. In his charge, he did that. But in their instruction, in the questions that the juries asked, they were obviously very, very confused because they came back and asked the question and that's where he answered them. He did not give the correct answer. And I would like to point out, I was. Wasn't the question, though, is the government required to show every element of the underlying substantive offense? You're saying, and he answers, no. That's wrong? Well, the jury had to be aware of the elements of the underlying substantive offense in order to find him guilty of that. And I believe that the jury asked Judge Schiller, what, you know, do we have to find them guilty of the underlying offense, and Judge Schiller says no. And. And that's wrong? I'm sorry? Is Judge Schiller's response wrong, mistaken, in error?  His mistake is, you know, to say, well, you can disregard what the substantive offense is in order, and, you know, the jury is probably thinking when they come back, you know, some other thing other than conspiracy. And I would like to point out, Your Honors, and I think this is important, that the government agreed with me when they came before Judge Schiller. In their answer to my post-trial motions on 10-1906, they file an answer agreeing with our position, and then in their brief that they give before this course, they take a totally different point of view. And reading from their brief, they said, while the jury need not find that the elements of the substantive offense occurred in order to convict for conspiracy, it must be informed as to what the substantive offense was that was the object of the conspiracy. Jenkins' contention has arguable merit. The jury first asked, do the four elements of carjacking apply to conspiracy to commit carjacking? To this, the court responded, no. It's a separate crime. The government acquiesced in this statement by the court, but the statement is incorrect. So the government files a motion before Judge Schiller, agreeing with our contention that Judge Schiller gave wrong answers to the questions by the jury, and asked that a new trial be granted on those charges, and then they come before this court, and they have an entirely different position. Well, back to something you said before. You had said Judge Schiller gave the answer, and you can't fault Judge Schiller for not wanting to start a conversation in open court with the jurors. He said, if you have another question, write it out, and we'll consider it. Your adversary points out that they didn't, and they came back with a verdict shortly thereafter, and couldn't it be inferred that the jury understood at that point? Well, I think the last thing that the judge said is you're giving me a blank look. So, you know, to come back within 45 minutes after giving them a blank look, and asking a number of questions that they didn't understand what was going on, would appear to me that the jury did not understand what was taking place. We then go to Trial 2, which was a hung jury, and then we then come to Trial 3. And what I wanted to mention on Trial 3 very quickly is this was a conspiracy to commit bank robbery. And my argument here, it's my fourth argument, is that the court erred by denying the appellant's pretrial motion in limine. And what I pointed out in my brief is throughout that entire trial, the prosecutor went on and on and on about the victims in the case, how they were elderly, how the husband had Alzheimer's disease, how he was tied up, how the wife was in fear of her life. And they asked all of these questions of the woman in this case. They were asking her continuously about it. And both in the opening and the closing, as I stated in my brief, the government just went on and on and on about how horrible it was what these men did to these people. You never mentioned Rule 410, though, in that application. I did not. About the guilty plea? Yes, yes. No, it was my belief that everything would have come under the pretrial. 410, that's a separate matter. Yes, Your Honor. It was my feeling that that would have come under the motion in limine that I filed. Well, I mean, I don't think it can. It's a separate matter. You acknowledge that. Right. Yes, Your Honor. Your Honor. And I know the government in their brief pointed out they said, well, appellant never objected while all this prejudicial information was coming in. And the reasoning why there was no objection is, number one, this had been denied by Judge Siller. It had been thoroughly argued before him. It was the third trial before Judge Siller, and counsel had to make a decision so as not to upset the judge who I think had had it with these three trials already and do the best he could with the rulings that had been made by Judge Siller. Well, this is a new trial. Every trial stands on its own two feet. And forget about upsetting any judge, myself included. You're a lawyer. You've got to do your thing. And lawyers are not there to please judges. They're there to represent clients. Right. But if the judge is getting on the lawyer in front of the jury, it's going to affect the verdict in the case. Well, I've got to say, the lawyer's got to do what he should do to represent the client and not worry about upsetting a judge. It's too bad for the judge if he's upset. Well, the judge had denied all of our motions, and it had been brought up. So there's nothing really more I could do. I mean, the government says that I should have stood up every time the prosecutor said something prejudicial. No, no. But in a new trial, you've got to start anew. Right. What you do in one trial does not carry over to another trial. You know that as well as I do. No, I understand that, Your Honor. I believe my time is up.  We'll have you back on rebuttal. Thank you, Your Honors. Ms. McKeon. You may proceed. May it please the Court, my name is Bernadette McKeon, and I represent the United States in this matter. McKeon? Is it McKeon or McKeon? Either. Well, tell me which one it is. McKeon, actually. McKeon? Yes, McKeon. I would like to start by addressing the last issue that was raised by Mr. Levin, and that addresses the judge's ruling on the motion in Limine, and in particular on the Rule 410 issue. It's the government's position that the defense waived the right to bring this 410 claim at this point in the appeal. It was never mentioned at any time in any proceeding. The appeal of his position is it's subsumed and included within the scope of what was raised. I don't think that's a fair representation. Why not? Although he did move, and his motion in Limine was extremely broad to exclude all reference. He mentioned 410 by name, but his position is, in essence, it's there. Invisible, intangible, but nevertheless, it's there. I would disagree with that, and I disagree with that because although the motion moved to exclude all reference to the theft of the minifam period, which would take a large chunk of the government's evidence right out of the case, and the judge rightfully rejected that, the 410 issue was a much narrower issue, which was whether or not there could be any mention of the state court charges and the state court guilty plea. And what I wanted to point out to the court was it's not just the defense's failure to raise any specific claim with respect to that issue. It was the fact that throughout the course of the proceeding, starting in the opening statement in the very first trial, the defense heavily relied, interjected it in the first place, and then heavily relied on the state court charges and the state court guilty plea as a cornerstone of its defense for two reasons. First, the defense, the opening statement in the very first trial was, you will hear that my client readily admitted that he committed those events inside the Robinson residence, and he pled guilty to state charges stemming from those. And then the defense was, but he didn't commit the federal crime of carjacking or the federal crime of conspiracy to commit bank robbery. He also used it in a second way, and this was particularly important in the credibility of Rasheem Jones, the cooperating defendant, who was the primary witness on the bank robbery conspiracy. So throughout, we have this used very heavily and relied upon very heavily in the first trial. The second trial, we don't have the transcript, but there's indications in the trial from the third transcript that it was also introduced in the second trial. In the third trial, there was no, had he wanted to change his tactic at that point. Let me ask this. How can it be possible that someone could be charged with a conspiracy to commit a crime when the jury is charged as to what a conspiracy is, an agreement and so forth and so on, but not charge what the elements are of what the subject of the conspiracy is i.e. the substantive effects? How could the jury here know what the conspiracy entailed when they weren't told what the object of the conspiracy was going to be? But they were told in this case, Your Honor. In the first trial, and this is a very important point, Mr. Levin talked about how the government is taking an inconsistent position. That is not true. In the first trial, when the judge instructed the jury on the conspiracy to commit bank robbery, he did not instruct them on the substantive crime. There was no mention of the elements and no instruction at all. That is why we conceded that that was error and we agreed that there should be a new trial on the conspiracy to commit bank robbery. In the third trial, the judge, he instructed the jury on the elements of conspiracy and then went on to lay out for them the elements of the substantive crime. When the jury came back for the questions. The jury came back with a question, correct. He did not explain to them what the substantive offense is. He had given them a written copy of his jury charge and they had that with them. Now, the court doesn't mention that when he says that, but the counsel knew that. There was no objection to the court's answer to these questions. We're in plain error here, I acknowledge. But, you know, it could be structural, a structural error without showing prejudice if a jury convicts someone of a crime that a jury was never charged to consider. Well, Your Honor, that still would be subject to plain error review and that's this court's decision in Simes, which was the issue on the 924C instruction. Well, explain to me now how the jury knew what the substantive offense, the conspiracy was all about when they came in and asked what is it and these questions and answers were elicited. I think you have to look at the jury's specific question, which was not what is it. Their question, their first question was, do the four elements of carjacking apply to conspiracy to commit carjacking? The judge tersely answered, no, it's a separate crime. The jury then came back again and the judge said, let me try to make this a little clearer. And again, the question was in reference to the answer you just gave us, if the four elements of carjacking do not have to be met in count four, the conspiracy count, what are the elements we need to consider to reach a decision? The court went on to say, and correctly so, that this was a conspiracy, that it's a separate crime, but they must find that the object of the conspiracy was to commit the substantive carjacking offense, which the jury had been instructed on and which the jury had a copy of the judge's charge back with them in the jury room. So your position is they were not confused as to what the elements of carjacking were? That's correct, Your Honor. That's where you and Mr. Levine are. I think there's no question that they knew what the substantive elements were. Perhaps they didn't know how they came into play in determining and evaluating Why does the record reflect that they had a blank stare about that, if you say that the question had been answered? Well, the judge said, do you understand that? Everyone is giving me a blank look. They followed up and said, we have a layman's question. The judge said, send me another note, which was the proper way to do it, because the court did. And I think it's very important, even though this is plain error review, the court consulted with the attorneys about the appropriate answers to give to the jury. To suggest now, when there was no objection to the answer the court gave, no request to follow that up with anything else, that that warrants a new trial is just completely extreme and unwarranted in this situation, because the judge's jury instruction was legally correct. And it included the elements of carjacking? It did, Your Honor. So it's a far different situation now. So you're saying it's a red herring, or not a red herring, but this is a I would say there's no plain error. There was no error here. Never mind plain error. Counsel, can I ask you something that your adversary didn't address in his oral argument? This constructive amendment to the jury instruction, the 924 to the firearm charge now, Judge Cowan had an excellent opinion in the Loney case, where he pointed out that 924C actually has two different things. It's the in relation to and the in furtherance of. But he also, I believe that opinion also said that the in furtherance creates a higher standard. But in this case, the district judge instructed the jury on the lower one. Now, how do you, what's your argument there? Our argument is, number one, we agree this was a constructive amendment of the indictment, and that we also agree that the in furtherance standard, at least as interpreted by this court, is considered a slightly more stringent standard. So it wouldn't necessarily encompass conduct that satisfies the Dorian in relation to Prong. However, what sign told us and what the prior decision, although not presidential, dealt with section 924C, they said this is not a structural error that's per se reversible in the plain error context. So where there was no objection in the plain error context, there's a presumption of prejudice, but it can be rebutted by a showing that the defendant's substantial rights were not affected in this case. And in prior, they went on then. It was the reverse situation. Right. Which is an easier case, obviously. It was an easier case. But the court did reject the government's, had argued that they should adopt the bright line rule, that whenever you had that situation, it was as a matter of law, it would have satisfied the in furtherance standard. Here, but then prior went on to look at the facts of the case and say, given the facts in this case, there's no question that the jury would have reached the same result had they been given the correct instruction. That's exactly the situation we have here. And I tie that to the evidence in this case. In this case, the evidence was, Rasheen Jones testified that they planned this armed bank robbery from the moment they left Philadelphia on May 27th and drove to South Jersey. They possessed firearms, which they intended to use in that robbery. They intended to steal a minivan. That was an overt act, and it was an essential component of the bank robbery plan to use as a getaway car. And then, of course, Humbert and Jenkins do go into the Robinson's residence and steal that minivan using their guns during that incident. There was no dispute at trial that Jenkins possessed a gun during the taking of the incident at the Robinson's and taking of the minivan, which was an overt act in the conspiracy. The jury found and convicted the defendant of the conspiracy to commit bank robbery and specifically found that he had used and carried his gun during and in relation to the bank robbery conspiracy. Under these facts, there's at no point could the jury have concluded that this was during and in relation to and not in furtherance of the bank robbery plan. Your position, it's not a structural error, in other words, you say, if there are no substantial rights violated. That's exactly right, Your Honor. What case is that? That's the sign case. It's a Judge Becker opinion from 2002. That's the presidential decision, and then it's followed up by prior work. But how do we know, though, that the jury didn't follow the instructions given by the court in looking at the elements that they had to find were in existence to come back with the guilty verdict on that particular count? We can't assume that they ignored what the court said. I think that's exactly right, Your Honor. We have to presume that the jury applied the law that they were given by the court. And the court gave the wrong law on the furtherance. There's no question he gave the wrong instruction, but the test is given the facts of this case, does that necessarily subsume a finding that under these facts that by finding that he possessed a gun during and in relation to the bank robbery conspiracy, he also produced it in furtherance of. And my response is that every single act they took from the time they left after the incident at the Robinsons was in furtherance of the bank robbery conspiracy. And in particular, those events inside the Robinson residence where it's not disputed that the defendant possessed a gun. Was there any testimony that the defendant used the gun? The gun was displayed. Did he use it? I mean, was there any testimony that it was displayed? Yes, yes, there was, and he admitted that. The gun was displayed. That was developed in the evidence. So to sum up, I think the position is that it's just impossible that the jury that found that he possessed this gun during and in relation to the bank robbery conspiracy could have found that it wasn't in furtherance of the conspiracy given the facts of this case. Let me ask you on another area since your time is running short. In counsel's brief, he argues that there was really only evidence of one conspiracy. Yeah. My response would be that's not true. Under the Blockburger test, the Supreme Court's Blockburger test, you look at whether or not if there's two separate conspiracies charged, whether or not those conspiracies contain different elements, at least one additional element. There's no question that it does here because the substantive offenses that they're charged with were entirely different. Here, there's some overlap in evidence because, of course, the carjacking was an overact in the bank robbery conspiracy, but it's also a separate and independent crime that stands on its own. The jury could have rejected all of the evidence about the bank robbery conspiracy and convicted solely on the carjacking, but they were two separate and distinct conspiracies. Yeah, but you had your argument was that the home invasion carjacking evidence was admissible in the bank robbery, and to me it's a confusing thing that the complaint that there are two separate conspiracies here when you're using the same evidence to prove both crimes. Well, you're using the same evidence to prove—well, I should back up there a minute. The evidence relating to the home invasion and the taking of the minivan was directly relevant to prove the conspiracy to commit bank robbery, but the conspiracy to commit bank robbery also involved other proof. So there wasn't a complete overlap. We don't have the same set of evidence proving up both crimes. There are additional facts that were pertinent to the bank robbery plan. The jury could have easily rejected the fact that there was a bank robbery plan on top of this conspiracy to commit a carjacking. So you say just because there's an additional one element in one of the offenses, that's sufficient to make it two conspiracies? That's sufficient under Blackburger, yes. And not one conspiracy. Yes, Your Honor. My time is up. Any further questions? Mr. Levin? Yes, Your Honor. If Your Honor, please, when the government mentioned again these jury instructions, I do not believe they answered why they agreed that a new trial should be granted on the conspiracy to commit carjacking. Yes, they did say that there should be a new trial granted on the bank robbery, but they also agreed in their filing of 10-19-06 that a new trial should be granted on the conspiracy to commit bank robbery. The other thing that the government mentioned was the fact that counsel, in their opening statement in the first trial, mentioned the guilty plea to the jury. But as Judge Cohen has said, each of these trials were separate. In the first trial, my client was charged with a whole litany of cases. In the third trial, he was only charged with conspiracy to commit bank robbery, and counsel had to rely on the rulings that had been made by the court. So what was done in the first trial was after there was a ruling made that certain things were going to come in, counsel had to rely on them. The other thing, one of your honors mentioned on the instructions concerning the questions by the jury, there was argument before the jury came out as to how the judge should charge. And Judge Shiller disagreed with counsel for the appellant as to the answers that was going to be given. There was a lengthy argument given as to what the judge was going to say, and there was objections made as to what the judge was going to say. So we did object to that whatsoever. The last thing I believe counsel discussed was whether there was two separate and distinct conspiracies. And our position is that there was only one conspiracy whatsoever. The whole thing was one conspiracy to steal a car so that they could rob the bank. It was not two separate conspiracies. And as I said earlier, there was no conspiracy to commit carjacking in this case. Thank you, your honors. Okay. Thank you, Mr. Levin. Thank both counsels for a case that was very well argued. And we'll take the matter under advisory.